**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CATHERINE COFFMAN, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR VIOLATIONS** |
| | ) | **OF THE FEDERAL SECURITIES** |
| IVERIC BIO, INC., ADRIENNE L. GRAVES, | ) | **LAWS** |
| MARK S. BLUMENKRANZ, AXEL BOLTE, | ) | |
| PRAVIN U. DUGEL, JANE PRITCHETT | ) | JURY TRIAL DEMANDED |
| HENDERSON, CHRISTINE ANN MILLER, | ) | |
| CALVIN ROBERTS, and GLENN P. | ) | |
| SBLENDORIO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against IVERIC bio, Inc. ("IVERIC" or the "Company") and the members of IVERIC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell IVERIC to Astellas Pharma Inc. ("Astellas") (the "Proposed Transaction").

2. On April 28, 2023, IVERIC entered into an Agreement and Plan of Merger with Astellas US Holding, Inc. ("Parent"), Parent's wholly owned subsidiary Berry Merger Sub, Inc.

("Merger Sub"), and solely for purposes of Section 8.10(b), Astellas (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, IVERIC shareholders will receive $40.00 in cash for each IVERIC common share (the "Proposed Transaction").

3. On June 5, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that IVERIC stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; and (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors, BofA Securities, Inc. ("BofA Securities") and Centerview Partners LLC ("Centerview").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as IVERIC stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for IVERIC stockholders to vote on the Proposed Transaction is currently scheduled for July 6, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and IVERIC's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of IVERIC common stock.

10. Defendant IVERIC is a Delaware corporation, with its principal executive offices located at 8 Sylvan Way, Parsippany, New Jersey 02054. IVERIC's shares trade on the Nasdaq Global Select Market under the ticker symbol "ISEE."

11. Defendant Adrienne L. Graves has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Mark S. Blumenkranz has been a director of the Company at all relevant times.

13. Defendant Pravin U. Dugel has been President and a director of the Company at all relevant times.

14. Defendant Jane Pritchett Henderson has been a director of the Company at all relevant times.

15. Defendant Christine Ann Miller has been a director of the Company at all relevant times.

16. Defendant Calvin Roberts has been a director of the Company at all relevant times.

17. Defendant Glenn P. Sblendorio has been Chief Executive Officer and a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

19. IVERIC is a science-driven biopharmaceutical company focused on the discovery and development of novel treatments for retinal diseases with significant unmet medical needs. The Company's lead asset is its clinical stage product candidate, avacincaptad pegol ("ACP"), also referred to as Zimura. The Company is currently targeting the following diseases for ACP: (i) geographic atrophy, which is the advanced stage of age-related macular degeneration ("AMD"); (ii) intermediate AMD, which is an earlier stage of AMD; and (iii) autosomal recessive Stargardt disease. On February 16, 2023, the Company announced that the U.S. Food and Drug Administration had accepted the New Drug Application for filing and granted priority review for ACP with a Prescription Drug User Fee Act target action date of August 19, 2023.

**The Proposed Transaction**

20. On April 30, 2023, IVERIC announced that it had entered into the Proposed Transaction, stating, in relevant part:

> TOKYO & PARSIPPANY, N.J.--(BUSINESS WIRE)--Apr. 30, 2023-- Astellas Pharma Inc. (TSE: 4503, President and CEO: Naoki Okamura, "Astellas") and IVERIC Bio, Inc. (NASDAQ: ISEE, CEO: Glenn P. Sblendorio, "Iveric Bio") today announced that on April 29, 2023 (Japan time), the Companies have entered into a definitive agreement under which Astellas through Berry Merger Sub, Inc., a wholly-owned subsidiary of Astellas US Holding, Inc., has agreed to acquire 100% of the outstanding shares of Iveric Bio for US$40.00 per share in cash for a total equity value of approximately US$5.9 billion (the "Acquisition"). In the Acquisition, Iveric Bio will become an indirectly wholly-owned subsidiary of Astellas. The total equity value of Iveric Bio in the Acquisition assumes that there

are approximately 148.2 million outstanding shares of Iveric Bio common stock on a fully diluted basis. The purchase price represents a premium of 64% to Iveric Bio's unaffected closing share price of US$24.33 on March 31, 2023, and a premium of 75% to Iveric Bio's 30 trading day volume weighted average price as of March 31, 2023. The Boards of Directors of both companies have unanimously approved the transaction.

"We are pleased to reach an agreement with Iveric Bio, a company with exceptional expertise in the R&D of innovative therapeutics in the ophthalmology field," said Naoki Okamura, President and CEO, Astellas. "Iveric Bio has promising programs including Avacincaptad Pegol ("ACP"), an important program for Geographic Atrophy ("GA") secondary to Age-Related Macular Degeneration ("AMD"), and capabilities across the entire value chain in the ophthalmology field. We believe that this acquisition will enable us to deliver greater VALUE to patients with ocular diseases at high risk of blindness."

"This transaction with Astellas, a highly respected pharmaceutical company, demonstrates the significant value that we have built for our stockholders and recognizes the tremendous work by our dedicated team at Iveric Bio," said Glenn P. Sblendorio, Chief Executive Officer of Iveric Bio.

"The opportunity to create a world-class entity with the ophthalmology expertise and capabilities of Iveric Bio and the global reach and resources of Astellas is unique and has the potential to benefit patients worldwide suffering from blinding retinal diseases, including GA," said Pravin U. Dugel, MD, President of Iveric Bio.

1. Strategic Objectives of the Acquisition

Astellas aims to become a cutting-edge, VALUE-driven life science innovator to realize its VISION to be "on the forefront of healthcare change to turn innovative science into VALUE for patients." Through Astellas' R&D strategy, Focus Area Approach, it is working to create innovative drugs for diseases with high unmet medical need by identifying unique combinations of biology and therapeutic modality / technology from multiple perspectives. Currently, Astellas has identified five Primary Focuses, including "Blindness & Regeneration", and is prioritizing investment resources in these areas. As such, this transaction is a key step in building Astellas' product portfolio in this important area.

Iveric Bio focuses on the discovery and development of novel treatments in the field of ophthalmology. The company announced in February 2023 that the U.S. Food and Drug Administration ("FDA") accepted for filing a New Drug Application ("NDA") for ACP for the treatment of GA secondary to AMD. The NDA has been granted priority review with a Prescription Drug User Fee Act ("PDUFA") goal date of August 19, 2023.

ACP, a complement C5 inhibitor, is an investigational drug for GA secondary to AMD and has significant potential to deliver value to a large and underserved patient base. ACP met its primary efficacy endpoint (reduction of the rate of GA progression) with statistical significance across two pivotal clinical trials (GATHER Clinical Trials) and has received breakthrough therapy designation*1 from the FDA for this indication.

Astellas expects that the acquisition of Iveric Bio will not only contribute to Astellas' FY2025 revenue targets set in its Corporate Strategic Plan 2021, but also, that ACP in conjunction with fezolinetant and PADCEV, is anticipated to be a revenue-generating pillar to help compensate for the decline in sales of XTANDI due to anticipated patent expiration later this decade.

In addition, the acquisition of Iveric Bio will provide a foundation of ophthalmology focused capabilities, including a multi-faceted commercial team, expansive network of experts in the ophthalmology field, established relationships with medical institutions, and the infrastructure and experience to drive our combined ophthalmology business going forward. Furthermore, through acquired capabilities, Astellas will accelerate pre-clinical and clinical development and commercialization activities to positively contribute to the goals of Primary Focus, "Blindness & Regeneration."

Funds for the acquisition consist of newly procured funds from bank loans and issuing of commercial paper totaling approximately 800 billion yen and existing cash on hand. Astellas expects to repay this debt within the next five to seven years. The completion of the Acquisition is not subject to a financing condition. Astellas does not anticipate making any change in its dividend policy following the Acquisition.

The closing of the proposed Acquisition is subject to approval by Iveric Bio's stockholders and other customary closing conditions, including receipt of required regulatory approvals. The companies expect to complete the Acquisition in the second quarter of Astellas' fiscal year 2023 (third calendar quarter of 2023). A copy of the merger agreement regarding the proposed Acquisition will be filed with the U.S. Securities and Exchange Commission ("SEC") and will be publicly available on the SEC's website at (http://www.sec.gov).

**The Materially Incomplete and Misleading Proxy Statement**

21.  On June 5, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that IVERIC stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information,

concerning: (i) the Company's financial projections; and (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors BofA Securities and Centerview.

*Material Misrepresentations and/or Omissions Concerning IVERIC's Financial Projections*

22.     The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

23.     For example, the Proxy Statement fails to disclose a quantification of the risk adjustments made to, and assumptions underlying, each of the Company's "2023 Management Projections," "July 2022 Base Case Projections," "July 2022 ISEE Today Case Projections," and "August 2022 Management Projections," including, but not limited to: (i) "the development and commercialization of IVERIC's product candidates, including risk and probability adjustments reflecting IVERIC management's good faith assessment as to the probability of success for IVERIC's product candidates and pipeline programs" (Proxy Statement at 67-68); (ii) the "assumptions regarding IVERIC's potential future collaborations with third parties, including in the case of the July 2022 Management Projections and the 2023 Management Projections assumptions regarding the terms of a potential ex-US collaboration for ACP, and upfront payments, royalties and milestone payments received in connection with such collaborations" (*id.* at 68); and (iii)

> the probability of success associated with technical and regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market growth, market share, competition, market exclusivity, research and development expenses, general and administrative expenses, effective tax rate and utilization of net operating losses or research and development tax credits, [and] any future equity or debt raises conducted by IVERIC[.]

*Id.* The Proxy Statement also fails to disclose a summary of the Company's non-risk-adjusted projections.

24. The Proxy Statement further fails to disclose a summary of the projections for each of the Company's other product candidates, including IVERIC management's "assessments as to the product candidates of IVERIC, including the likelihood of technical, clinical and regulatory success of such product candidates" relied upon by BofA Securities in connection with its financial analyses. *Id*. at 50.

25. Additionally, with respect to the Company's "2023 Management Projections," the Proxy Statement fails to disclose the line items underlying the calculation of the Company's: (i) Gross Profit; (ii) EBIT; (iii) Net Income; and (iv) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning BofA Securities' and Centerview's Financial Analyses*

26. The Proxy Statement fails to disclose material information concerning BofA Securities' financial analyses.

27. With respect to BofA Securities' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for IVERIC; (ii) the inputs and assumptions underlying the discount rates ranging from 11.50% to 15.00%; and (iii) the Company' fully-diluted shares outstanding and additional shares of common stock assumed to be issued in connection with the future equity financing assumed to occur in 2023, used by BofA Securities in the analysis.

28. With respect to BofA Securities' *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the companies and transactions analyzed, respectively.

29. With respect to BofA Securities' *Wall Street Analysts Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

30. With respect to BofA Securities' *Premia Calculations* analysis, the Proxy Statement fails to disclose: (i) the identities of the transactions analyzed; and (ii) the individual premiums observed for each transaction.

31. The Proxy Statement also fails to disclose material information concerning Centerview's financial analyses.

32. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for IVERIC; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; and (iii) the Company's fully-diluted shares outstanding used by Centerview in the analysis.

33. With respect to Centerview's *Selected Public Company Analysis* and *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the companies and transactions analyzed, respectively.

34. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

35. With respect to Centerview's *Prema Paid Analysis*, the Proxy Statement fails to disclose: (i) the identities of the transactions analyzed; and (ii) the individual premiums observed by Centerview.

36. In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections" and "Opinion of IVERIC's Financial Advisors" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of IVERIC will be unable to make a sufficiently informed decision in

connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and IVERIC**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. IVERIC is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of IVERIC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of IVERIC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of IVERIC, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 13, 2023                                     **LONG LAW, PLLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

Attorneys for Plaintiff